**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

SKENLEY TRUMAN JOACHIM,

     Petitioner,

 v.

PIKE COUNTY CORRECTIONAL
FACILTIY,

     Respondent.

CIVIL ACTION NO. 3:26-CV-01111

(MEHALCHICK, J.)

**<u>MEMORANDUM</u>**

Petitioner, Skenley Truman Joachim ("Joachim"), a citizen of Haiti and asylum seeker, brings this petition for writ of habeas corpus. (Doc. 1). On April 28, 2026, Joachim filed the instant petition, requesting that Respondent Pike County Correctional Facility[1] release him from custody or provide him with an immediate bond hearing. (Doc. 1, at 8). On May 6, 2026, Lowe filed a response to Joachim's petition. (Doc. 7). Joachim did not file a timely traverse. For the following reasons, Joachim's petition (Doc. 1) is **GRANTED**, and

---

[1] Pursuant to the "immediate custodian rule," the only proper respondent in this case is Craig Lowe ("Lowe"), Warden of the Pike County Correctional Facility. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Joachim is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 1, at 2); *see Rumsfeld*, 542 U.S. at 434. However, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Joachim on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

Lowe is **ORDERED** to release Joachim from custody.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Joachim's petition, Lowe's response, and the exhibits thereto. (Doc. 1; Doc. 7). Joachim is a citizen of Haiti, who has lived in the United States since April 2023. (Doc. 7, at 4). Joachim first entered the United States on April 11, 2023 through the San Ysidro Port of Entry. (Doc. 7, at 4). Joachim did not have documents to enter the United States; however, after providing his contact information in Florida, where he was heading, immigration authorities released Joachim into the United States. (Doc. 7, at 4). Immigration authorities did not detain Joachim at the border. (Doc. 7, at 4).

Joachim submits that since entering the United States, he received an employment authorization, driver's license, and social security number. (Doc. 1, at 7). Joachim provides that he has complied with all immigration requirements. (Doc. 1, at 7). On August 9, 2023, Joachim filed a Form I-589 application for asylum and for withholding of removal. (Doc. 7, at 4). On January 15, 2025, ICE served Joachim with a notice to appear for a hearing in Miami, Florida on February 3, 2026. (Doc. 7, at 4). In the notice to appear, ICE charged Joachim as an arriving alien who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document. (Doc, 7, at 4; Doc. 7-3, at 2).

On January 20, 2026, Pike County Pennsylvania State Police contacted Enforcement and Removal Operations ("ERO") Philadelphia to report that Joachim crashed a delivery truck into the Greely, Pennsylvania Post Office. (Doc. 7, at 4). Joachim submits that he was working as an Uber driver at the time of the accident. (Doc. 1, at 7). ERO officers encountered Joachim at the scene of the accident and arrested Joachim for violating the Immigration and

Nationality Act ("INA") and the terms of his initial release. (Doc. 7, at 5). After processing, ERO officers transported Joachim to the Pike County Correctional Facility, where he remains detained. (Doc. 7, at 5). On April 21, 2026, an immigration judge issued Joachim an order of removal; however, Joachim did not waive his appeal, and the order of removal is not final. (Doc. 7, at 5). On May 22, 2026, Joachim filed a notice with the Court that he has filed an appeal before the Board of Immigration Appeals. (Doc. 8). Joachim has been in ICE custody for approximately four months. (Doc. 7, at 5). Joachim submits that his detention has caused a significant hardship to his family, especially to his United States citizen child. (Doc. 1, at 7).

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court

3

determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *8 (E.D. Pa. Nov. 14, 2025) (finding that the appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

### III.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Joachim*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Kashranov*, 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction over Joachim's habeas petition because the legal questions of whether § 1225(b) or § 1226(a) applies to Joachim and whether Joachim is entitled to a bond hearing are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79.

IV.    DISCUSSION

Joachim contends that his prolonged mandatory detention is unjustified because he is not a flight risk nor a danger to the community. (Doc. 1, at 7). Joachim provides that he was

5

working lawfully at the time of his arrest, and that he has strong community ties and no criminal record. (Doc. 1, at 7). Lowe counters that Joachim is properly detained without an opportunity for bond under 8 U.S.C. § 1225(b)(2)(A) because he is present in the United States without lawful admission. (Doc. 7, at 18). Lowe also contends that Joachim's detention under 8 U.S.C. § 1225(b)(2)(A) does not violate the Due Process Clause of the Fifth Amendment because Joachim, a noncitizen without admission, is limited to the due process rights provided by the INA. (Doc. 7, at 17). The Court will first address whether Joachim was properly detained under § 1225(b). The Court will then address whether Joachim's detention violates due process.

A. LOWE IMPROPERLY DETAINED JOACHIM UNDER 8 U.S.C. 1225(B).

Lowe improperly detained Joachim under 8 U.S.C. § 1225(b), when Lowe should have detained Joachim under 8 U.S.C. § 1226(a). Joachim avers that he is entitled to release or a bond determination because he has a pending asylum application, strong community ties, and no criminal record. (Doc. 1, at 7). Lowe counters that Joachim is properly detained under § 1225(b)(2)(A), which mandates the detention of noncitizens who are present in the United States without lawful admission. (Doc. 7, at 18-19).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. *Matter of Yajure Joachim*, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and

6

Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in part, to end the preferential treatment of noncitizens who evaded inspection when entering the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Joachim*, 29 I. & N. Dec. at 223. With the IIRIRA, Congress eliminated separate exclusion and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Pursuant to section 1225(b)(1) of the IIRIRA, when a noncitizen enters the United States at a designated port of entry, they are considered an "arriving alien" and are generally subject to expedited removal, unless they indicate an intention to apply for asylum. If the asylum officer finds a noncitizen's asserted fear of persecution to be credible, the noncitizen's asylum claim will be fully considered in a standard removal hearing. 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(ii). Noncitizens are subject to detention while an immigration judge considers their asylum application; however, the Department of Homeland Security may grant such noncitizens parole into the United States for humanitarian purposes. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 U.S.C. § 1182(d)(5). Pursuant to 8 C.F.R. § 212.5(e), humanitarian parole issued under 8 U.S.C. § 1182(d)(5) terminates without written notice at the time it expires, upon the noncitizen's departure from the United States, with written notice "upon accomplishment of the purpose for which parole was authorized," or with written notice when, in the opinion of DHS officials, neither humanitarian reasons nor public benefit warrants the continued presence of the noncitizen in the United States. When humanitarian

parole under 8 U.S.C. § 1182(d)(5) terminates, the noncitizen "shall be restored to the status the he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i).

Section 1225(b)(2)(A) of the INA is a catchall provision, that applies to applicants for admission not otherwise covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025) (collecting cases).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings*, 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and

across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid v. Bondi*, No 3:25-cv-00304, 2025 WL 2985150, at *16 n. 7 (W.D. Pa. Oct. 23, 2025); *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 807 F. Supp. 3d at 407. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[2] *Kashranov*, 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody

---

[2] The Court acknowledges that the Fifth Circuit and Eighth Circuit recently issued decisions in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026) and *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) respectively, both holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* and *Avila* are not binding on the Court.

determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice announced a new practice, in which all applicants for admission, regardless of when the noncitizens were apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited May 11, 2026). On September 5, 2025, the BIA adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Joachim*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes*, 2025 WL 3171639, at *2 (finding that § 1226(a), not § 1225(b)(2)(A), is applicable to a petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but was "already here"); *Del Cid v. Bondi,*

10

2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto,* 807 F. Supp. 3d at 408 (collecting cases).

Section 1226(a), not § 1225(b)(1) or § 1225(b)(2)(A), applies to Joachim's detention. Section 1225(b)(1) does not apply to Joachim's detention because while Joachim entered the United States at a port of entry, he was not detained at the border, and the government provides no evidence that Joachim was paroled into the county. (Doc. 7, at 4-5; Doc. 7-2). If Joachim was not paroled into the country under 8 U.S.C. § 1182(d)(5), he cannot be restored to the status he had at the time of a nonexistent parole. (Doc. 7, at 17); 8 C.F.R. § 212.5(e)(2)(i). Even if Joachim was paroled into the country, the government provides that Joachim was not detained at the border. (Doc. 7, at 4). Therefore, upon revocation of parole, Joachim would not be returning to custody under § 1225(b)(1) because he was never detained under § 1225(b)(1). (Doc. 7, at 4); 8 C.F.R. § 212.5(e)(2)(i). Further, even if Joachim was paroled into the United States, as the government did not terminate parole in accordance with the written notice requirements of 8 C.F.R. § 212.5(e), Joachim cannot be restored to his status at the time of parole. (Doc. 7, at 4-5); 8 C.F.R. § 212.5(e).

Section 1225(b)(2)(A) also does not apply to Joachim's detention because Joachim is not seeking admission into the United States. Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez,* 792 F. Supp. 3d at 214, *see Kashranov,* 2025 WL 3188399, at *6; *see also* 807 F. Supp. 3d 397, at 400, 408 (collecting cases). Joachim is not actively attempting to come into the United States; Joachim has lived in the United States since April 2023. (Doc. 7, at 4). Based on the plain meaning of the phrase "seeking admission," Joachim sought admission when he entered

11

the United States on April 11, 2023. (Doc. 7, at 4); *see Kashranov,* 2025 WL 3188399, at \*6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"). Instead, § 1226(a) applies to applicants for admission, like Joachim, who are not actively seeking admission but who have been residing in the United States for an extended period. *See Kashranov,* 2025 WL 3188399, at \*1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but "already here"); *see also Soto,* 807 F. Supp. 3d at 400, 408 (collecting cases). Accordingly, after Joachim's arrest, Lowe improperly detained Joachim under § 1225(b), when he should have detained Joachim under § 1226(a).

B.  LOWE VIOLATED JOACHIM'S DUE PROCESS RIGHTS BY IMPROPERLY SUBJECTING JOACHIM TO MANDATORY DETENTION.

Lowe's continued mandatory detention of Joachim under § 1225(b) violates Joachim's procedural due process rights. The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews,* 424 U.S. at 334.

12

The first factor, private interest implicated by the government action, weighs heavily in Joachim's favor because Lowe has deprived Joachim of his physical liberty with four months of improper detention without the possibility of bond under § 1225(b)(2)(A). (Doc. 7, at 4-5); *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects); *Soto*, 807 F. Supp. 3d at 409. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Joachim's favor because Joachim remains erroneously detained without the possibility of release on bond pursuant to § 1225(b)(2)(A). *See Soto*, 807 F. Supp. 3d at 409 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error).

The third *Mathews* factor, the government's interest, also weighs in Joachim's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 807 F. Supp. 3d at 409-10. Joachim poses no such risk to the government's interest in detaining him. Lowe does not allege that Joachim poses a flight risk or danger to the community. (*see* Doc. 7). Further, Joachim has demonstrated compliance with the immigration process by following immigration requirements, obtaining work

13

authorization, and timely applying for asylum. (Doc. 1, at 7). As each *Mathews* factor weighs in Joachim's favor, Lowe's mandatory detention of Joachim under § 1225(b)(2)(A) violates Joachim's procedural due process rights. Accordingly, Joachim's petition for writ of habeas corpus is **GRANTED**, and Lowe is **ORDERED** to release Joachim from custody.

## V.    CONCLUSION

For the foregoing reasons, Joachim's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Lowe is **ORDERED** to release Joachim from custody. Joachim may move to reopen this matter if Lowe seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

BY THE COURT:

Dated: May 18, 2026

*/s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**